IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TECHRADIUM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-1887 |
| | § | |
| EDULINK SYSTEMS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this patent case, one of the defendants, SwiftReach Networks, Inc., has moved to dismiss on the basis that it reached a Settlement and License Agreement with the plaintiff, TechRadium, Inc. (Docket Entry No. 225). The Settlement Agreement SwiftReach submitted is not signed by TechRadium. SwiftReach asserts that the Agreement is nonetheless enforceable because counsel for SwiftReach communicated his client's acceptance of the terms. TechRadium responds that Rule 11 of the Texas Rules of Civil Procedure applies and that the Agreement does not satisfy Rule 11's requirements.

Based on a careful review of the record, the motion and response, and the applicable law, the motion is denied. The reasons are explained below.

**I.      Background**

Counsel for TechRadium and SwiftReach began serious settlement discussions on February 21, 2011. (Docket Entry No. 225, Ex. A). The parties sought an agreement under which SwiftReach would pay TechRadium to license the disputed technology. SwiftReach contends that the parties "reached agreement on <u>all</u> substantive terms of the settlement" by March 22, 2011. (Docket Entry

No. 225, at 2). Six days earlier, on March 16, TechRadium's counsel e-mailed SwiftReach's counsel a revised draft agreement. The e-mail stated: "Please see the attached redline version of the agreement you sent over. I would consider my changes fairly non-controversial. Please review and get back with me." (*Id.*, Ex. B). After TechRadium's counsel e-mailed SwiftReach's counsel on March 22 to find out his response, SwiftReach's counsel responded:

> We have no objection to your proposed changes. I had emailed noting that on Thursday evening and left you a voice message on Friday evening. I assume, from your message earlier this afternoon, that you did not receive those messages. I accepted your changes and made some minor changes to the formatting and numbering, simply to keep the format consistent throughout the document. Again, I attach my proposal in redline. If you have no objections, SwiftReach has authorized us to execute the attached draft.
>
> Please feel free to give me a call if you would like to discuss this matter further.

(*Id.*). The attached document and subsequent drafts provided that the "Agreement is effective beginning on the Effective Date" and defined Effective Date as "the date or the last of the dates, if different, on which this Agreement is executed by all the Parties." (*Id.*, ¶¶ 1.2, 5.1). Paragraph 8.8 addresses execution. It states:

> This Agreement may be executed as duplicate originals, both of which shall be regarded as one and the same instrument, and each of which shall be the official and governing version of this Agreement. This Agreement may be executed by facsimile signatures. In addition, single or duplicate originals of this Agreement may be executed by the Parties with multiple counterpart signature pages, where each individual Party executes a separate signature page, provided however that every Part[y] execute[s] a signature page.

(*Id.*, ¶ 8.8). The final page provides signature blocks for SwiftReach and TechRadium.

SwiftReach's counsel e-mailed TechRadium's counsel on March 24 with a copy of the draft changed to incorporate a new law firm affiliation and address. The Agreement was executed by

2

SwiftReach's CEO, Kevin Alward.  The e-mail message read, "Thanks, Shawn.  I made the change to your address that you suggested and attach a copy executed by Kevin Alward, the CEO of Swiftreach."  (*Id.*, Ex. D).  TechRadium's counsel responded, "Thanks.  I will forward for signature and get back with you."  (*Id.*, Ex. E).

Six days later, on March 30, SwiftReach's counsel sent TechRadium's counsel an e-mail confirming a telephone conversation earlier that day.  The e-mail read, in relevant part:

> I write to confirm our conversation earlier this afternoon regarding the Settlement and License Agreement between TechRadium and SwiftReach.  I understand that your client is reviewing and signing the agreement today.  In view of the fact that we do not yet have a signed agreement, TechRadium agrees that the first payment, as required by section 4.1(i) may be transmitted within three business days of SwiftReach's receipt of a fully executed copy of the agreement.

(Docket Entry No. 228, Ex. 1).  TechRadium's counsel responded the same day, writing, "I agree with everything below, except that I am not guaranteeing or representing that TechRadium will sign today—or ever.  I *think* they are signing today."  (*Id.*).

On April 6, 2011 TechRadium's counsel e-mailed SwiftReach's counsel about TechRadium's delay signing the agreement.  TechRadium's counsel wrote: "Sorry about the delay.  It is not regarding the agreement, but rather about final arrangements between my old and new firms.  I realize that is not your problem, but your patience is appreciated."  (Docket Entry No. 225, at 3 (emphasis removed)).[1]  On June 6, TechRadium's counsel informed SwiftReach's counsel that TechRadium would not sign the Agreement.

SwiftReach moved to dismiss, arguing that the Agreement is enforceable.  TechRadium

---

[1] This e-mail is not in the record.  SwiftReach's motion cites to Exhibit F, but that exhibit was not filed.  TechRadium has not disputed SwiftReach's account.  As set out below, the e-mail does not affect the outcome.

argues that the Agreement is not enforceable without a signature from one of its representatives. The arguments are analyzed below.

**II.     The Standard for Enforcing a Settlement Agreement**

A federal court has authority to enforce an agreement to settle litigation before it. *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1999). The law of the circuit in which the patent suit is brought determines the law applicable to enforcing a settlement agreement. *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1562 (Fed. Cir. 1985). In cases based on federal law, the Fifth Circuit applies state law to the enforcement of settlement agreements unless there is a "strong federal interest" favoring federal law. *Omni Video*, 60 F.3d at 232 (determining that state law applies to the enforceability of a settlement in a bankruptcy case). Neither party argues that such a federal interest exists in this case. The parties agree that Texas law applies. *See Sun Studs*, 772 F.2d at 562 (applying California law to determine whether a settlement in a patent case was enforceable) (citing *In re Beverly Hills Bancorp*, 649 F.2d 1329, 1332–33 (9th Cir. 1981) (holding that state law applies to a bankruptcy case settlement)).

Under Texas law, "[a] settlement agreement must comply with Rule 11[of the Texas Rules of Civil Procedure] to be enforceable." *Padilla v. LaFrance*, 907 S.W.2d 454, 462 (Tex. 1995) (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1982); *see also Lefevre v. Keaty*, 191 F.3d 596, 598 (5th Cir. 1999) (applying Rule 11 in federal court); *Omni Video*, 60 F.3d at 232 (same). Rule 11 states that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. For an oral agreement to be enforceable, the parties must read and agree to the terms in open court. *Lefevre*, 191 F.3d at 598. A writing must

be signed and placed in the court's record before enforcement. *Id.* Multiple signed writings may together satisfy these requirements. *Padilla*, 907 S.W.2d at 460; *Roeglin v. Daves*, 83 S.W.3d 326, 332 (Tex. App.—Austin, 2002, pet. denied) (considering whether multiple e-mails formed a binding Rule 11 agreement) .[2]

Compliance with Rule 11 is "necessary, but not sufficient." *Kennedy*, 682 P.2d at 529. Settlement agreements must also satisfy ordinary principles of contract law. *See, e.g.*, *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 298 (Tex. App. — Austin 2000, pet. denied) (noting that "compliance with Rule 11 is necessary even if an agreement otherwise satisfies the requirements of Texas contract law"). A written agreement may be enforceable without the parties' signatures unless the agreement requires them. *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010); *cf. Padilla*, 907 S.W.2d at 640 ("Where an offer prescribes the time and manner of acceptance, those terms must ordinarily be complied with to create a contract."). If the parties agree that an agreement will not be effective without signatures, signatures are required to create an enforceable agreement. *Mid-Continent*, 323 S.W.3d at 157. Parties may waive the prescribed requirements for acceptance. *Padilla*, 907 S.W.2d at 640.

**III.    Analysis**

The Agreement in this case requires the signatures of both parties to become effective. The Agreement provides that the "Agreement is effective beginning on the Effective Date" and defines "Effective Date" as "the date or the last of the dates, if different, on which this Agreement is executed by all the Parties." (Docket Entry No. 225, Ex. B, ¶¶ 1.2, 5.1). Paragraph 8.8 sets out rules

---

[2]    Courts have recognized an equitable exception to Rule 11 to prevent the party denying the agreement from gaining an "'unfair advantage.'" *Roeglin*, 83 S.W.3d at 332 (quoting *Williams v. Huling*, 43 Tex. 113, 120 (1875)). SwiftReach has not argued that this exception applies.

be signed and placed in the court's record before enforcement. *Id.* Multiple signed writings may together satisfy these requirements. *Padilla*, 907 S.W.2d at 460; *Roeglin v. Daves*, 83 S.W.3d 326, 332 (Tex. App.—Austin, 2002, pet. denied) (considering whether multiple e-mails formed a binding Rule 11 agreement) .[2]

Compliance with Rule 11 is "necessary, but not sufficient." *Kennedy*, 682 P.2d at 529. Settlement agreements must also satisfy ordinary principles of contract law. *See, e.g.*, *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 298 (Tex. App. — Austin 2000, pet. denied) (noting that "compliance with Rule 11 is necessary even if an agreement otherwise satisfies the requirements of Texas contract law"). A written agreement may be enforceable without the parties' signatures unless the agreement requires them. *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010); *cf. Padilla*, 907 S.W.2d at 640 ("Where an offer prescribes the time and manner of acceptance, those terms must ordinarily be complied with to create a contract."). If the parties agree that an agreement will not be effective without signatures, signatures are required to create an enforceable agreement. *Mid-Continent*, 323 S.W.3d at 157. Parties may waive the prescribed requirements for acceptance. *Padilla*, 907 S.W.2d at 640.

**III.    Analysis**

The Agreement in this case requires the signatures of both parties to become effective. The Agreement provides that the "Agreement is effective beginning on the Effective Date" and defines "Effective Date" as "the date or the last of the dates, if different, on which this Agreement is executed by all the Parties." (Docket Entry No. 225, Ex. B, ¶¶ 1.2, 5.1). Paragraph 8.8 sets out rules

---

[2]    Courts have recognized an equitable exception to Rule 11 to prevent the party denying the agreement from gaining an "'unfair advantage.'" *Roeglin*, 83 S.W.3d at 332 (quoting *Williams v. Huling*, 43 Tex. 113, 120 (1875)). SwiftReach has not argued that this exception applies.

for executing the Agreement. If the parties execute separate copies of the Agreement, the Agreement requires that "every Parties execute a signature page." (*Id.*, ¶ 8.8). The Agreement does not provide for acceptance other than by signature. SwiftReach's CEO signed the Agreement, but no one signed the Agreement for TechRadium. The Agreement is not executed according to its terms.

SwiftReach contends, without addressing Agreement's terms, that it does not require signatures. Its argument focuses entirely on communications between the parties' lawyers. Communications between counsel may show acceptance of an agreement in a manner not contemplated by the original offer. *See Padilla*, 907 S.W.2d at 640. None of the e-mails by TechRadium's counsel, however, relaxed the Agreement's requirement of signatures from both parties. In response to an e-mail from SwiftReach's counsel stating his understanding that TechRadium would sign the Agreement that day, TechRadium's counsel made clear that "I am not guaranteeing or representing that TechRadium will sign today—or ever. I *think* they are signing today." (Docket Entry No. 228, Ex. 1). TechRadium's counsel's alleged statement that the delay was due to his change of firms, "not regarding the agreement," does not show SwiftReach's relaxation of the signature requirement or unconditional acceptance of the Agreement. (*See* Docket Entry No. 225, at 3). The statement concerned the reason for delay, not whether TechRadium had agreed to settle. *Cf. Padilla*, 907 S.W.2d at 640 (finding that an enforceable agreement to settle existed because the party disputing the settlement faxed a letter to the other party stating that "[t]his letter will confirm that the above referenced matter *has been settled*" (emphasis in original)).

SwiftReach's argument that signatures were unnecessary is also undermined by its counsel's earlier e-mail summarizing a conversation in which the counsel for SwiftReach and TechRadium

6

agreed that SwiftReach would not pay the first payment under the Agreement until three days after "SwiftReach's receipt of a fully executed copy of the agreement." (Docket Entry No. 228, Ex. 1). This e-mail suggests that SwiftReach also believed that the Agreement would not be binding without SwiftReach's signature.

These e-mails are insufficient to create a binding settlement agreement. The record does not allow dismissal on the basis of the Agreement.

**IV.     Conclusion**

SwiftReach's motion to dismiss is denied.

SIGNED on July 12, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge