**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

TECHRADIUM, INC.,

        Plaintiff,

vs.

EDULINK SYSTEMS, INC.,
FIRST CALL NETWORK, INC.,
PARLANT TECHNOLOGY, INC.,
TWENTY-FIRST CENTURY
COMMUNICATIONS, INC.,

        Defendants.

**Case No. 4:10-cv-01887**

Judge Rosenthal
Jury demanded

**DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Dated: August 31, 2012

William H. Oldach III (*admitted pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
1909 K Street, NW, 9th Floor
Washington, D.C.  20006
Tel: 202-467-8880
Fax: 202-533-9024
wholdach@vorys.com

Sharon K. Wendell
VORYS, SATER, SEYMOUR AND PEASE LLP
700 Louisiana, Suite 4100
Houston, Texas  77002
Tel: 713-588-7002
Fax: 713-588-7052
swendell@vorys.com

John Okuley (*admitted pro hac vice*)
OKULEY SMITH, LLC
Mueller-Smith Building
7700 Rivers Edge Drive
Columbus, Ohio  43235
Tel: 614-436-0600
Fax: 614-436-0057
jokuley@mullersmith.com

Robert T. Veon
Texas Bar No. 20546550
VEON LAW FIRM, P.A.
2710 Arkansas Boulevard
Texarkana, Arkansas  71854
Tel: 870-774-7390
Fax: 870-773-3690
robert.veon@veonfirm.com

*Attorneys for Twenty-First Century
   Communications, Inc.*

Robert A. Huntsman *(admitted pro hac vice)*
HUNTSMAN LAW GROUP, PLLC
4466 Riva Ridge Way
Boise, Idaho  83709
Tel: 208-362-3723
Fax : 208-362-3723
law2010@huntsmanlg.com

*Attorneys for Edulink Systems, Inc.*

Ryan R. Brown (*admitted pro hac vice*)
Carlton Jones III (*admitted pro hac vice*)
ROEDEL, PARSONS, KOCH, BLANCHE,
   BALHOFF & McCOLLISTER, APLC
8440 Jefferson Highway, Suite 301
Baton Rouge, Louisiana  70809-7652
Tel: 225-929-7033
Fax: 225-928-4925
rbrown@roedelparsons.com
cjones@roedelparsons.com

*Attorneys for First Call Network, Inc.*

James Wesley Kinnear
(*admitted in the Southern District of Texas*)
California State Bar No. 124771
JEFFER, MANGELS, BUTLER & MITCHELL LLP
Two Embarcadero Center, Suite 500
San Francisco, California  94111
Tel: 415-398-8080
Fax: 800-219-2807
jwk@jmbm.com

Jacob C. Ong (*admitted pro hac vice*)
Parlant Technology, Inc., dba ParentLink
180 North University Ave., Ste. 500
Provo, UT 84601
Tel: 801-373-9669 ext. 104
Fax: 801-373-9697
jacob.ong@parlant.com

Hunter S. Barrow
Federal Admission No. 25828
State Bar No. 24025240
THOMPSON & KNIGHT LLP
333 Clay Street
Suite 3300
Houston, Texas  77002
Tel:  (713) 951-5838
Fax:  (713) 654-1871
hunter.barrow@tklaw.com

*Attorneys for Parlant Technology, Inc.*

## **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ......................................................................................... 1

  A.  Overview Of The Technology And Patents-In-Suit .............................................. 1

  B.  Posture Of The Case ........................................................................................... 5

  C.  The Defendants' Accused Systems/Methods ....................................................... 6

      1.  The Accused *Parentlink* Notification System of Parlant Technologies, Inc. ........................................................................................ 7

      2.  The Accused Universal Communications System of Twenty-First Century Communications, Inc. ................................................................. 9

      3.  The Accused Intouch Notification System of Edulink Systems, Inc. ........ 12

      4.  The Accused Emergency Notification System of First Call Network, Inc. ............................................................................................. 13

III. SUMMARY OF ARGUMENT .................................................................................. 16

IV. ARGUMENT ............................................................................................................. 17

  A.  Legal  Standards ................................................................................................. 17

  B.  TechRadium Cannot Establish That Any Defendant Practices The Method Claimed In The Patents According To The Court's *Markman* Ruling ................. 18

      1.  TechRadium Cannot Establish That Defendants' Systems Perform a Method Using "User Selected Priority Information" ............................ 19

      2.  TechRadium Cannot Establish That Defendants' Systems Perform Method of Using "User Selected Grouping Information" ........................ 22

      3.  TechRadium Cannot Establish That Defendants' Systems Transmit Messages "Simultaneously" ..................................................................... 24

      4.  TechRadium Cannot Establish Defendants' Systems "Ensure Each User in the at Least One Group of Users Is Contacted on the First Group of User Contact Devices Before the Second Group "of User Contact Devices Using the User Selected Priority Information" .............. 29

C.    The Plaintiff's Infringement Contentions Fail To Adequately Allege Infringement Of A Method Claim, And The Asserted Claims Cannot Be Infringed As Contended ........................................................................ 33

D.    TechRadium Has Not Asserted And Cannot Assert Infrigement Under The Doctrine Of Equivalents .............................................................................. 36

V.    CONCLUSION ..................................................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 17

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,*
    868 F.2d 1251 (Fed. Cir. 1989)....................................................................... 16, 18

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293 (Fed. Cir.
    2005) ......................................................................................................................... 28

*Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ................... 18

*Exigent Tech. Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301 (Fed. Cir. 2006)........................... 18

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) .............................................. passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)........................... 17

*Miniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) ........................................ 28

*Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664 (E.D. Tex. 2007) ................................. 17, 36

*Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043 (Fed. Cir. 2001)................................. 18

*On Demand Mach. Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331 (Fed. Cir. 2006) ..................... 28

*Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101 (E.D. Tex.
    Aug. 18, 2009) ......................................................................................................... 18

*Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008) .................... 16, 33, 34

**STATUTES**

U.S.C. §271(a) ................................................................................................................... 33, 34

**RULES**

Fed. R. Civ. P. 56(c) ................................................................................................................ 17

Fed. R. Civ. P. 56(e)(2)............................................................................................................ 17

P.R. 3-1 .................................................................................................................................... 36

P.R. 3-1(c) ................................................................................................................................ 35

P.R. 3-1(d)................................................................................................................................. 36

vi

## I.  <u>INTRODUCTION</u>

Now that the asserted method claims of U.S. Patents Nos. 7,496,183 and 7,519,165 (the

"'183 and '165 Patents" or, collectively, the "patents-in-suit") (Exs. 1, 2, respectively) have been

construed, it is crystal clear – as admitted in court by counsel for plaintiff, TechRadium, Inc.

("TechRadium") -- that none of the Defendants'[1] accused systems are capable performing the

claimed methods.  Defendants therefore respectfully move for summary judgment of non-

infringement of the patents-in-suit.

As demonstrated herein, Plaintiff has no evidence that any of the Defendants satisfy

***multiple elements*** of the claimed methods and cannot point to any genuine issue of material fact

on these questions.  Each of the Defendants herein presents evidence that it does not use a

method to send notifications that comprises one or more of the following steps:

- using "user selected grouping information";

- using "user selected priority information" to determine the order in which individual devices are contacted; or

- "transmit[ting] the message through two or more industry standard gateways simultaneously."

Summary judgment is therefore proper as a matter of law, and judgment should be entered in

Defendants' favor.

## II.  <u>STATEMENT OF FACTS</u>

### A.  <u>Overview Of The Technology And Patents-In-Suit</u>

As the Court is aware from the claim construction proceedings in this matter, mass

notification systems are in widespread use, and have been so for quite some time, allowing a

system administrator to distribute a large volume of messages to individual message recipients in

---

[1] All defendants remaining in this action – Edulink Systems, Inc. ("Edulink"); First Call Network, Inc. ("First Call");
Parlant Technology, Inc. ("Parlant"); and Twenty-First Century Communications, Inc. ("TFCC") – are movants
herein.  Accordingly, a decision granting this motion would be dispositive as to the entire litigation.

a short period of time.  One common commercial use for mass notification system technology is to facilitate communication between schools and parents.  For example, in an emergency, a school superintendent can record a message for the mass notification system to send to all parents.  This message can be sent via phone, email, fax, and SMS text to make sure all parents are contacted as soon as possible.  In a common, non-emergency situation, a school principal can have the mass notification system make automated phone calls to the homes of students who are absent on a given day and send warning emails to the homes of students missing five consecutive days.

Another common application for mass notification methods is by utilities.  For example, in cases of restoration of power following outages, utilities can send messages to customers' home phones, cell phones, or email accounts.  Utilities can send out similar messages to alert customers to forthcoming rolling blackouts or similar exigencies. Implementations of mass notification systems vary among service providers such as Defendants, but all are able to send notifications to multiple users.

Many methods and systems can be used to implement these messages, and several of the Defendants in this case have pioneered various systems and methods dating back to the early 1990s and before.  Thus, at best, the '183 and '165 Patents allow TechRadium to exclude others from using only those particular systems and methods described and claimed in the patents.

As detailed herein, the '183 and '165 Patents very superficially describe and claim a loosely defined system and method for carrying out mass notifications.  As shown most succinctly in Figure 1 of the patents (see Fig. 1 below), the claimed system and method comprises a dynamic information database **12**, which includes user contact data **14**, that data in turn comprising user contact data, user selected priority information, and user selected grouping

2

information.  An administrator **8** accesses the dynamic information database **12** through an administrator interface **4** in order to send a message **6** through a plurality of industry standard gateways **30**, **32**.  The message passes through the gateways to one or more user contact devices **9a**, **9b**, **9c** of a user **17**.  As set forth in the claims and discussed herein, the order in which the user contact devices **9a**, **9b** and **9c** are contacted is determined through the priority information **16** that is part of the dynamic information database **12**.



    The asserted Claim 1 of each of the '183 and '165 Patents reads respectively as follows (with elements and terms significant to this motion highlighted):

    1.      ('183 Patent)   A ***method*** to provide a digital notification and response to groups of users having at least one contact device comprising:

    storing in a dynamic information database:

            user contact data for at least one group of users, wherein each user in the at least one group of users has at least one user contact device;

        ***user selected priority information*** that comprises a contact order for each user contact device; and

        ***user selected grouping information*** comprising at least one group associated with each user contact device; using an administrator interface to form at least one message;

using an administrator in communication with at least one processor to initiate transmission of the at least one message simultaneously to a first group of user contact devices for all users in the at least one group of users and then simultaneously to a second group of user contact devices for all users in the at least one group of users using the user selected priority information and *transmitting the at least one message through at least two industry standard gateways simultaneously*; and

using the administrator interface *to ensure each user in the at least one group of users is contacted on the first group of user contact devices before the second group* of user contact devices using the user selected priority information.

1.      ('165 Patent)   A *method* to provide a digital notification and response to groups of users having at least one contact device comprising:

storing in a dynamic information database:

user contact data for at least one group of users, wherein each user in the at least one group has at least one user contact device information;

*user selected priority information* that comprises a contact order for each user contact device; and

*user selected grouping information* comprising at least one group associated with each user contact device;

using an administrator interface to form at least one message;

using an administrator in communication with a processor to initiate transmission of the at least one message simultaneously to a first group of user contact devices for all users in the at least one group of users and then simultaneously to a second group of user contact devices for all users in the at least one group of users using the user selected priority information *transmitting the at least one message through at least two industry standard gateways simultaneously*;

using the administrator *interface to ensure each user in the at least one group of users is contacted on the first group of user contact devices before the second group* of user contact devices using the user selected priority information; and

receiving responses from the user contact devices through the at least two industry standard gateways simultaneously by the administrator interface and storing the responses in the dynamic information database, wherein the responses indicate the user contact devices that have received the at least

4

one message and the responses indicate when insufficient user contact device information exists to contact the user contact devices.

**B.**    **Posture Of The Case**

TechRadium filed its original Complaint in this action in the United States District Court for the Eastern District of Texas on September 14, 2009, alleging infringement not only of the '183 and '165 Patents but also their parent, United States Patent No. 7,130,389 (the "'389 Patent"), by eleven defendants.  After the case was transferred to this district on May 24, 2010, TechRadium moved to file a Second Amended Complaint ("SAC") that withdrew its allegations of infringement of the '389 Patent (Doc. 167, SAC, entered July 23, 2010.)[2]

Pursuant to Rule 3-1(c) of the Rules of Practice for Patent Cases in this district, TechRadium provided Preliminary Infringement Contentions on January 14, 2011.  However, these were deemed inadequate by the Court, and on January 27, 2011 it ordered TechRadium to provide amended Preliminary Infringement Contentions by February 4, 2011.  (*See* Doc. 203). TechRadium did so (*see* Exs. 4-7)[3], and those charts are now controlling for purposes of this litigation, as they have not been amended in view of the Court's Markman ruling (*see below*).

Later, following briefing and argument, the Court issued its *Markman* ruling on July 18, 2012 (Doc. 251) construing the claim terms relevant to analyzing the asserted infringement of the '165 and '183 patents.  For convenience, Exhibit 8 provides a table of all the agreed constructions of claim terms and of all the disputed claim terms construed by the Court.  For purposes of the instant motion, the following constructions are the most germane:

| "User" | An intended recipient of a message sent by an administrator |
|---|---|

---

[2] For reasons known at present only to itself, TechRadium filed an irrevocable covenant not to sue on the '389 patent as part of its motion to file the SAC on June 14, 2010.  (*See* Doc. 146.)
[3] Exhibits 4-7 comprise Plaintiff's contentions as to the '183 and '165 Patents against, respectively, Parlant, TFCC, Edulink, and First Call.

| "User selected priority information" | Information provided by a user specifying the order in which that user's contact devices are to be contacted |
|---|---|
| "User selected grouping information" | information chosen by a user that correlates a contact device of a user to one or more groups |
| "transmitting… simultaneously" | Each message must be transmitted through more than one of the industry standard gateways at the same time |
| *simultaneously* to a first group . . . and then *simultaneously* to a second group | the administrator initiates the transmission of a message to a first set of user contact devices for all users in one or more particular groups of users at the same time, before initiating the transmission of that message to a second set of user contact devices at the same time |
| industry standard gateway | a connection between two networks using different communication protocols that translates data from one protocol to another industry-standard protocol |

Following a status conference, the Court entered a Second Amended Scheduling Order (Doc. 255) giving TechRadium, consistent with P.R. 3-6(b), until August 15, 2012 to serve Final Infringement Contentions to reflect any changes to its assertions in view of the Court's claim constructions.  TechRadium has not done so, and therefore its (Amended) Preliminary Infringement Contentions are controlling.

### C.   The Defendants' Accused Systems/Methods

Each of the Defendants has produced to plaintiff during discovery in this case documents that demonstrate that their systems are not capable of performing the methods that are the subject of the '183 and '165 Patents.  This is not surprising, as Plaintiff's own counsel stated during the Markman hearing in this matter that a finding of infringement would be "virtually impossible" given the claim construction entered by the Court.  (Ex. 3, Markman transcript, at 17.)  The

evidence supporting this point is presented in affidavit form by employees of each of the moving defendants.  That evidence is summarized for each defendant as follows:

1.      **The Accused *Parentlink* Notification System of Parlant Technology, Inc.**

Parlant has been making and offering mass communication systems since 1991.  In 2002 Parlant sold the system ParentLink XP. (Ex. 8, Affidavit of Steve Jibson ("Jibson Aff.") ¶8.) The current versions of ParentLink XP are ParentLink 9 and Parlant Mass Communication 9 (collectively "Parlant systems").  (Jibson Aff. ¶8.)  Since 2002, Parlant systems have essentially operated, and continue to operate, without changes from ParentLink XP in any respect that are relevant to this litigation. (Jibson Aff. ¶8.)

Parlant considers multi-channel messages to be messages sent through multiple forms of telecommunications, such as voice, email, facsimile and SMS text. (Jibson Aff. ¶9.)  Parlant systems have never required, and do not require, that each user in a group of users has at least one user contact device.  (Jibson Aff. ¶9.)  Parlant systems allow administrators to send messages to a user who does not have any user contact devices.  (Jibson Aff. ¶9.)

Parlant systems have not allowed, and do not allow, a user to provide information that specifies the order in which that user's contact devices are to be contacted by Parlant systems. (Jibson Aff. ¶10.)  Parlant systems have not had, and do not have, a user interface for users to specify the order in which Parlant systems should or must attempt to contact the user's contact devices.  (Jibson Aff. ¶10.)  Parlant systems have not delivered, and do not deliver, messages to a user using information provided by a user specifying the order in which that user's contact devices are to be contacted.  (Jibson Aff. ¶10.)  Since 2002, Parlant systems have allowed users to set a time schedule for the user's contact devices; this Parlant interface has never allowed a

user to provide information specifying the order in which that user's contact devices are to be contacted. (Jibson Aff. ¶10.)

Parlant systems do not translate data from one industry standard protocol to another industry standard protocol and, thus, do not transmit a message through an industry standard gateway.  (Jibson Aff. ¶11.)  All Parlant messages are either composed in a proprietary format or composed in the industry standard protocol format which is required by a particular vendor's telecommunications network or data network. (Jibson Aff. ¶11.)  For example, when Parlant systems send an email message, Parlant systems have composed, and continue to compose, the message in the SMTP protocol format and delivers the message in the SMTP protocol format to the telecommunications and data vendor; the telecommunications and data vendor then sends the email message to a user. (Jibson Aff. ¶11.)

Parlant has not induced, and does not induce, telecommunications and data network vendors to use industry standard gateways. (Jibson Aff. ¶12.)  Parlant has not controlled, and does not control, the telecommunications and data networks through which telecommunications and data network vendors deliver messages for Parlant. (Jibson Aff. ¶12.)  Likewise, for all the reasons mentioned in the preceding paragraph, Parlant systems have not transmitted, and do not transmit, at least one message through *two* industry standard gateways (emphasis added). (Jibson Aff. ¶13.)

Parlant systems have not initiated, and are incapable of initiating, transmission of a message to a first set of user contact devices for all users in one or more particular groups of users at the same time before initiating the transmission of that message to a second set of user contact devices at the same time.  (Jibson Aff. ¶14.)

Parlant systems have not transmitted, and do not transmit, a message through more than one industry standard gateways at the same time.  (Jibson Aff. ¶15.)  Parlant systems have not attempted, and do not attempt, to synchronize message delivery to the same device or the same user.  (Jibson Aff. ¶15.)  The software code of Parlant systems does not allow a phone message to a user to be transmitted to more than one vendor at the same time.  (Jibson Aff. ¶15.) Messages which are not phone messages, such as an SMS text message and an email message, are sent to telecommunications and data network vendors, and Parlant has not controlled, and does not control, whether two messages which are not phone messages, such as an SMS text message and an email message, are delivered to a user at the same time.  (Jibson Aff. ¶15.)

Parlant systems have never, and do not, ensure each user in the at least one group of users is contacted on the first group of user contact devices *before the second group* of user contact devices using the user selected priority information. (Jibson Aff. ¶16.)  As stated above: 1) no interface has existed in Parlant systems to send a message to a first group before sending a message to a second group, and 2) Parlant systems have not stored, and do not store, user selected priority information. Additionally, 1) Parlant systems have not required, and do not require, that a user have a first or second user contact device, and 2) Parlant systems have not ensured, and do not ensure, that a group of users are contacted on a first group of user contact devices before a second group of user contact devices.  (Jibson Aff. ¶16.)

### 2.    The Accused Universal Communications System of Twenty-First Century Communications, Inc.

In about July 2001, TFCC launched its Universal Communications System (UCS), allowing its clients to deliver multi-channel messages to administrator-selected groups of customers.  (Ex. 9, Affidavit of James Curran ("Curran Aff.") ¶ 1.)  TFCC utilizes a number of outside bureaus to deliver voice, text and facsimile messages to various telecommunications

networks.  (Curran Aff. ¶6.)  Thus, TFCC does not control the telecommunications ports through

which its vendors deliver messages. In fact, other than for email, TFCC does not operate

telecommunication portals (*i.e.*, gateways) that connect with the message recipient as part of its

UCS system.  (*Id.*)

From the perspective of TFCC, it considers most current notification campaigns to be

"multi-channel" campaigns, where the notification is delivered to a number of different types of

contact interfaces, such as voice, text, email, and facsimile.  TFCC first delivered multi-channel

notifications in 1997.  (Curran Aff. ¶4.)  TFCC uses a software-driven system to deliver batches

of messaging instructions to a telecommunications vendor, and the vendor then processes the

instructions to transmit the message campaign.  Before any message from TFCC is transmitted to

a portal, the message enters a series of polling and queuing mechanisms on the TFCC software

platform. (Curran Aff. ¶7.)  TFCC's UCS system has essentially operated without material

changes, and continues to operate, using the system of sequencing the delivery of messages since

at least as early as the launch of TFCC's "Sentinel" system in 2002. The current TFCC UCS

system has not had significant structural changes since about 2002.  (Curran Aff. ¶25.)

When a campaign administrator accesses the UCS administrative interface and initiates a

message campaign, the origination of a campaign directs the generation of notification messages

comprised of message content and delivery address targets.  (Curran Aff. ¶¶15-16.)  Delivery

address targets are equivalent to addresses for communicating with user contact devices.  The

delivery of message content and address targets to TFCC's bureaus is not synchronized.

(Currant Aff. ¶17.)  Accordingly, TFCC through its UCS platform does not make any effort to

synchronize message delivery by its outside bureaus.

Once TFCC delivers campaign instructions, including message content and target address instructions, to its outside bureaus, no effort is made to synchronize message delivery through telecommunications portals.  (Curran Aff. ¶ 8.)  The delivery of the campaign instructions is through a queuing system known by TFCC as a campaign activation sequencing XML protocol, and the campaign manager application uses the activation sequencing XML protocol to direct multi-channel messages to be delivered sequentially.  Each vendor bureau determines the manner and timing of the delivery messages to their portals according to each bureau's practices, and the traffic on their systems.  The delivery of messages is outside the control of TFCC. (*Id.*)

Because TFCC does not exercise control over the portals connecting its bureaus with the publicly available telecommunications network, TFCC does not, and has always been incapable of, transmitting any messages "through at least two industry standard gateways simultaneously". (Cite.)  TFCC does not deliver identical duplicate or redundant messages to a single contact device target through more than one portal (or more specifically, an industry standard gateway), neither sequentially nor simultaneously.  The connections between TFCC's UCS system and its bureaus are made through specially formatted, proprietary network connections.  TFCC does not now, and has always been incapable of, transmitting any messages "through at least two industry standard gateways simultaneously, wherein the two industry standard gateways are selected from the group consisting of: a SMTP gateway a SIP, an H.323, an ISDN gateway, a PSTN gateway, a softswitch, and combinations thereof." (Curran Aff. ¶ 12.)

The campaign activation XML protocol is parsed sequentially for each of the several channels through which a message is to be delivered.  The TFCC system acts upon the sequencing XML instructions for each channel, distributing voice, facsimile, text or page, for instance, individually, in a defined sequence.  Thus, messages to each different channel are

delivered to individual channel queues at TFCC's outside service bureaus sequentially and not simultaneously.  (*Id.* ¶14.)  The sequential delivery of messages is actually a design feature of the UCS notification system.  The UCS system is configured to actually ***avoid*** sending a high volume of simultaneous messages in order to avoid causing and undue number of operator intercepts due to the limited telecommunications capacity at various local exchanges. (*Id.* ¶15.)

### 3.    The Accused Intouch Notification System of Edulink Systems, Inc.

The notification system of Edulink is the Intouch Notification System (the "Intouch System").  The Intouch System was originally developed in 1998 and released in February of 1999, well before TechRadium filed for the patents-in-suit.  Edulink specializes in K12 education, and its notification system integrates directly with many popular K12 Student Management System databases.  (Ex. 10, Affidavit of David Funderburk ("Funderburk Aff.") ¶¶5-6.))

The Intouch System of Edulink is heavily designed around the concept of sending a message blast using multiple devices of a single, pre-defined group, a very old and well known concept.[4]  The blast is initiated by the administrator to all targeted devices of a group, without regard for any form of priority.  (Funderburk Aff. ¶ 15.)  The groups are defined by an administrator of the system, generally from forms collected when students register for school.  Parents cannot form their own groups; instead, groups are formed and input to the system by an administrator.  (*Id.* ¶ 17.)

While group members may have control over what devices are used to contact them, generally by providing the information to a school deploying the Intouch System, there is no

---

[4]      The Court can and should take judicial notice of the fact that the practice of notifying various public groups of critical information by two technologies simultaneously, – radio and print media – is old (notification of U.S. citizens of the Pearl Harbor attack on December 7, 1941 is a classic example).  Although all parties herein including Edulink use modern communication methods like emails instead of radio, the claims-in-suit are not technology specific and simply address generic communications mechanisms invented by others.

ordering of the transmission of messages.  (Funderburk Aff. ¶¶ 14-15.)  If an email address is provided, for example, all messages to that parent will be immediately sent to that email address. The concept of a contact order for the system is nonsensical because, although there may been various delays due to the underlying technologies involved, the order the messages reach the various devices is virtually random.  Neither the administrator nor the recipient user can control or influence the order in any meaningful way.

The Intouch System is useful in emergency situations in a straightforward, albeit limited, way.  Edulink's Intouch System can be used to send emergency messages to devices in a single group, again without regard to any priority.  (Funderburk Aff. ¶¶ 12, 15.)  The philosophy of Edulink, contrary to TechRadium's method of delivering message blasts, is to get messages out to all target devices as soon as possible.  Message transmissions are never withheld and thus are never dependent on a confirmation of the receipt of an earlier message.  (*Id.* ¶¶ 20-21.)  The concept of a first and second group, or multiple targeted groups, is not supported by the administrator interface.[5]

To summarize, the Edulink Intouch Notification System provides value to its customers primarily by integrating directly with many popular K12 Student Management System databases. Its messaging system, while robust, is nevertheless simple in design and execution, and transmits message blasts in a simple, predictable and straightforward (and old and well known) way and does not attempt any of multi-step message blasting techniques taught and claimed by TechRadium in the present action.

### 4.  The Accused Emergency Notification System of First Call Network, Inc.

---

[5]      An administrative user obviously can send messages to different groups over time, but  Edulink's Intouch System does not provide for coordinated staggered message distribution at all.  "Send" means "Send now!" to Edulink's Intouch System.

The First Call Emergency Notification System ("First Call ENS") was first developed in 1997 and launched in 1998.  The First Call ENS sends emergency notifications to groups recipients using recipient contact information.  Groups can be created from the onset by administrators of the First Call ENS.  An administrator or recipients of messages are able to input certain contact information into the First Call ENS database.

The First Call ENS uses voice, text, and e-mail methods to alert recipients through an administrator-defined list or by means of a geographic interface.  The First Call ENS can send 1) voice messages via landlines, cell phones, and VOIP phones, 2) text messages via Short Message Service (SMS), and 3) e-mail messages to individual e-mail addresses.  (Ex. 11, Affidavit of Matthew Teague ("Teague Aff.") ¶ 5.)  The First Call ENS maintains a database for contact information, including recipient contact information, i.e. recipient's home address, e-mail address, and telephone number(s).  The First Call ENS database is populated with recipient's contact information by the administrator or from a recipient by entering their contact information through a website or portal constructed or authorized by an administrator, i.e., Citizen's Registration or Sign-Up webpage.  However, the First Call ENS database does not store user selected priority information.  (Teague Aff. ¶¶6-8.)

For example, an administrator at a university can upload student's contact information into the First Call ENS database or students can elect to enter their contact information through a website or portal constructed or authorized by an administrator to receive alerts concerning campus emergencies.  Students can enter multiple contacts, such as their home, work, and/or cell phone number, and multiple e-mail addresses.  This contact information is then stored in the university's First Call ENS database customer file.  In either scenario, all contact information is stored in a First Call ENS database without regard to any priority order.  When an emergency

occurs, an administrator initiates messages to all of the contact devices provided in the First Call ENS database.  Importantly, at this point in the transmission of the message the First Call ENS does not prioritize contact information or devices related to each recipient.  (Teague Aff. ¶¶6-8.) Instead, First Call ENS transmits the message to any and all contact device capable of receiving the method of message stored in the database at the same time.

The First Call ENS uses a 3rd party vendor to transmit text messages via SMS protocol. (Teague Aff. ¶ 14.)  E-mail (SMTP) notifications are delivered by loading a batch of e-mail addresses to contact into the First Call ENS's SMTP Client.  (*Id.*)  Just like any typical e-mail transmission, The SMTP Client server provides the sending functionality of the transmission. The SMTP Client server sends the email to the recipient's e-mail exchanger server through a mail relay.   The SMTP Client server detects if the e-mail exchanger server is valid and has received the e-mail message transmitted.  It is the responsibility of the recipient's e-mail exchanger server to carry on the message to the individual's e-mail account.  The First Call ENS only delivers an e-mail to the recipient's e-mail exchanger server.  There is no prioritization order of any e-mail addresses delivered to the server by the First Call ENS during a transmission. (*Id.*)

Voice notifications are delivered by loading a batch of telephones numbers to transmit into a component called the OpsvMgr.  Essentially, the OpsvMgr is the director or manager for the calls in the First Call ENS.  The batch of telephone numbers is built based on the selected fixed list or Geographic Interface System area which is constructed by the administrator or determined by the information received from a website or portal that allows recipients to enter contact information.  No recipient phone number is treated or contacted in a sequential or prioritized manner.  (Teague Aff. ¶¶ 6-8.)  All of the phone numbers are delivered to the First

Call FNS Opsv, or dialers, and transmitted by the First Call FNS Opsv to a third party vendor that actually sends the calls to telecommunications companies, i.e. AT&T, Verizon, or Sprint. These telecommunications companies actually deliver the telephone calls to users' contact devices. The First Call ENS does not prioritize a user's contact devices in any manner and does not have user selected priority information that comprises a contact order for each of a recipient's contact devices. (Teague Aff. ¶¶ 6-8.) Neither the First Call ENS SMS, voice, or e-mail processes coordinate or communicate with one another during the transmission of a message. (*Id.* ¶ 16.) Each message in the process is transmitted separately and distinctly from one another. (*Id.*)

## III.    SUMMARY OF ARGUMENT

Plaintiff cannot show that Defendants infringe the asserted claims of the '183 and '165 Patents because their systems cannot perform several recited steps of the claims. Therefore, infringement cannot be maintained. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1259 (Fed. Cir. 1989).

TechRadium's infringement claims also fail because its patents are directed to methods for sending mass communications, but it has sued defendants who sell systems and software that can only be used by others allegedly to infringe. This is as a matter of law insufficient to establish infringement. *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008).

TechRadium also is not entitled to assert infringement under the doctrine of equivalents because its contentions do not list the doctrine as a basis for infringement. *Nike, Inc. v. Adidas Am. Inc.*, 479 F.Supp.2d 664, 670 (E.D. Tex. 2007)

## IV.   **ARGUMENT**

As shown below, Defendants do not infringe the asserted claims of the '183 and '165 patents for multiple reasons.  First, Plaintiff cannot prove that defendants' systems utilize "user selected priority information" or "user selected grouping information" as those terms have been defined by the Court.  Second, none of the defendants transmit messages "simultaneously" through multiple gateways.  In addition, as an overarching matter and regardless of the construction of any individual term, none of the defendants carry out the entire method claimed in the patents, and TechRadium has failed to properly plead its case in this regard.

### A.   **Legal Standards**

Summary judgment is proper "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Any Defendant seeking summary judgment  "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portion of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving Defendants have satisfied their burden, the Plaintiff, to successfully oppose the Defendants' motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The determination of infringement is a two-step process. First, the court determines the scope and meaning of the patent claims asserted.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  Second, the properly construed claims are compared to the allegedly infringing device. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). To establish literal infringement of a patent, every limitation set forth in a claim must be found in

17

an accused process exactly.  *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1259 (Fed. Cir. 1989).

"[T]he ultimate burden of proving infringement rests with the patentee," and in moving for summary judgment of non-infringement Defendants "may meet [their] initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  "[N]othing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Exigent Tech. Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).  Further, "Patent Rule 3-6 sets forth the procedures for amending infringement contentions.  This rule provides that infringement contentions 'shall be deemed to be ... final contentions.'" *Cf. Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *2 (E.D. Tex. Aug. 18, 2009).

      **B.**    **TechRadium Cannot Establish That Any Defendant Practices The Method Claimed In The Patents According To The Court's *Markman* Ruling**

TechRadium is without any factual support for its allegations of patent infringement against Defendants.  TechRadium has identified the particular notification systems marketed by each of the Defendants as the accused instrumentality in TechRadium's Amended P.R. 3-1(c) infringement contentions.  The accused systems include the Intouch Notification System of Edulink, the Emergency Notification System of First Call, the Parentlink system of Parlant, and the Universal Communications System of TFCC.  Not only are multiple elements of the claimed technology absent from each of the Defendants' systems, but also, since the claims are drawn to

a method, TechRadium cannot show that the any of the Defendants individually practice all of the steps of the method.

Because the systems of each of the Defendants do not comprise the elements of the claims, and because each of the Defendants do not individually practice all of the claimed steps, as a matter of law, **none** of the accused systems infringe any of the asserted claims.  *See, e.g.*, *Intellectual Sci. & Tech., Inc. v Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (patentee must set forth factual foundation to show that features of accused product support finding of infringement); *Arthur A. Collins, Inc. v. N. Telecom, Ltd.*, 216 F.3d 1042, 1047-48 (Fed Cir. 2000).  Therefore, Defendants are entitled to summary judgment of non-infringement.

### 1.    TechRadium Cannot Establish That Defendants' Systems Perform a Method Using "User Selected Priority Information"

The Court's *Markman*  ruling defines "user" as "an intended recipient of a message sent by an administrator and "user selected priority information" as "information provided by a user specifying the order in which that user's contact devices are to be contacted." (See Ex. 8.)  As set forth herein, none of the Defendants' systems use any such information.

First, as set forth in Mr. Jibson's affidavit, Parlant systems have not allowed, and do not allow, a user to provide information that specifies the order in which that user's contact devices are to be contacted by Parlant systems.  Parlant systems have not had, and do not have, a user interface for users to specify the order in which Parlant systems should or must attempt to contact the user's contact devices.  Parlant systems have not delivered, and do not deliver, messages to a user using information provided by a user specifying the order in which that user's contact devices are to be contacted.  Since 2002, Parlant systems have allowed users to set a time schedule for the user's contact devices; this Parlant interface has never allowed a user to provide information specifying the order in which that user's contact devices are to be contacted.

Likewise, as Mr. Curran states, the TFCC UCS notification system does not practice a method that comprises storing information in a database "user selected priority information that comprises a contact order for each user contact device." TechRadium asserts that literature of TFCC supports an allegation that TFCC store user selected priority information when TFCC states "[w]ith ever-increasing service level expectations, utilities must constantly adapt to customer preferences for on-demand information. This means offering options for how, when, and where your customers receive information and updates." (Ex. 4 at 3.)  This quote, and the documents from which it is extracted, however, simply do not disclose "user selected priority information." TechRadium offers no more specific support for TFCC practicing a method that utilizes such information.

As described in the outline of the TFCC UCS notification system, TFCC does not transmit messages according to a contact device priority order.  The TFCC system is configured to deliver large batches of message delivery instructions based on communication protocol sequentially to telecommunications portals.  For an intended message recipient, delivery is not controlled by that user's choice of contact device priority order.   If a message campaign on TFCC's system is configured to transmit a notification through multiple telecommunications channels, (i.e. voice, text, and email) the system transmits a notification to *every* entry in the database for a text or email.  The UCS system simply does not allow a user to select a contact order for different devices.  Thus, TFCC does not transmit messages using user selected priority information.[6]  Because TFCC does not collect and store or transmit messages using user selected

---

[6] All notification channels other than voice messages there is no selection of contact address capability, because the notification is sent to all available addresses.  With voice messaging only, the TFCC system permits the message administrator to structure hierarchical or "chain" calling scenarios. (i.e., call Bob; if Bob not available, call Bill, etc.) or to allow a single recipient to be called at multiple telephone numbers. TFCC has implemented this method since as early as 2001, and other commercial systems such as AT&T's "Find Me" system delivered this hierarchical capacity.

priority information, it does not practice the claimed method and does not infringe either the '165 or the '183 patent.

With Edulink's system, users cannot select priority information that comprises a contact order for each user contact device as required by each asserted claim because Edulink's contact devices are ***unordered***.  In Edulink's system, messages for all contact devices for a user are initiated simultaneously, thus there is no contact order (other than all devices simultaneous, a behavior that the user cannot change.)  Edulink's system cannot use user selected priority information to initiate transmissions as required by the asserted claims because there is ***no priority information***, user selected or otherwise, in Edulink's system.

Finally, First Call ENS does not store and is not capable of using "user selected priority information that comprises a contact order for each user contact device".  *See* '183 Claim 1, Col. 12, line 21; '165 Claim 1, Col. 11, line 46.  Since its start in the emergency notification industry, First Call has supported a belief that "time is of the essence" and its system has never had the capability to prioritize contact information or devices.  (Teague Aff. ¶6.)

As described in the previous outline of the various components of First Call ENS, and similar to the systems of the other defendants, messages are not stored or transmitted using priority information or in accordance to any contact device priority order.  (Teague Aff. ¶7.)  Messages are sent to recipients as they are numerically stored in the database.  They are *not* transmitted to recipients in any priority order.  Simply, no part of the First Call ENS prioritizes contact information or devices for recipients.  (*Id.* ¶8.)  Thus, because the First Call ENS does not practice the claimed method that comprises "user selected priority information that comprises a contact order for each user contact device" First Call ENS does not infringe the method claimed by either of the patents-in-suit.

In sum, none of the Defendants' systems make use of any "user selected priority information" and therefore, there can be no infringement.

### 2.   TechRadium Cannot Establish That Defendants' Systems Perform a Method Using "User Selected Grouping Information"

Relatedly, defendants' systems do not use "user selected grouping information" and so infringement cannot be shown.

For example, the TFCC UCS notification system does not practice a method that comprises "user selected grouping information comprising at least one group associated with each user contact device."  The parties agreed to a construction of "user selected grouping information" meaning "information chosen by a user that correlates a contact device of a user to one or more groups."  From the context of claim 1, such a group is a membership group like a PTA or Little League team.  TechRadium asserts that literature of TFCC supports an allegation that TFCC store user selected grouping information when TFCC states "[u]sing TFCC Alert, clients can send targeted messages to select groups by landline, cell phone, VoIP phone, PDA, pager, text, email, fax and TTY/TDD machines."  Simply finding a reference to "groups" is far distant from evidence for storing *user selected* grouping information.  TechRadium offers no more specific support for TFCC practicing a method that utilizes user-selected grouping information.  The allegation cannot be supported because TFCC does not engage in the nonsensical practice of allowing the intended message recipient to choose their own membership groups.  (Curran Aff. ¶¶15-16.)  Although the TFCC system is capable of sending messages to groups of users, the TFCC system does not allow users, *i.e.,* "the intended message recipient," to select the groups to which users are assigned.  The overall system administrator typically assigns individual users to groups.  (*Id.* ¶15.)  The administrator for a particular message campaign can select groups to which the messages of a notification campaign are delivered.  In no situation do

the intended message recipients select for themselves to which group that user is associated.  (*Id.* ¶16.)

Thus, the TFCC system does not practice a method where information is stored in a database comprising "user selected grouping information comprising at least one group associated with each user contact device."  To the contrary, the TFCC UCS notification system, if it were to send messages in groups, it would send those messages according to ***administrator*** selected grouping information.  (Curran Aff. ¶16.)

Counsel for TechRadium, Mr. Staples, essentially admitted before the Court that he did not believe that it made sense for notification system to allow ***users*** (defined as message recipients) to select the groups to which they were members.  (Ex. 8, Transcript of *Markman* Hearing, at 17.)  TFCC agrees and implements a successful notification system that makes sense. Because the TFCC UCS system does not practice the element of "user selected grouping information," the TFCC UCS system does not infringe the method claimed by either the '165 patent or the '183 patent.

Similarly, in Edulink's system, users cannot select grouping information as required by every asserted claim.  In Edulink's system, all grouping is done by an administrator.  There is no way a user can select his or her group.  Parents do not self-identify as parents, rather, the administrator forms a parent group from enrollment information.

Similar to the other defendants' systems, First Call ENS does not practice a method that comprises "user selected grouping information comprising at least one group associated with each contact device."  *See* '183 Claim 1, Col. 12, line 23; '165 Claim 1, Col. 11, line 48.  The allegation cannot be supported because First Call does not engage in the practice of allowing the intended recipient of a message to choose their own membership to a group.  An administrator

may associate a recipient and a recipient's multiple contact devices with a certain group or "fixed list", i.e. first responder team, hazard material team, maintenance crew. However, these groups are fixed by the administrator at the initial creation of the database for the client.

Further, if a recipient that is part of a certain group provides contact information for multiple contact devices, all of those contact devices are a part of the group for which the recipient is included.  There is no practice in the First Call ENS of allowing a recipient's individual contact devices to be associated with different groups for any purpose.  All of the contact information and devices for a recipient is stored without regard for grouping information.  Overall, an administrator assigns or allows recipients to become members of a particular "group" or database.  (Teague Aff. ¶9.)  Thus, because the First Call ENS does not practice the method that comprises "user selected grouping information comprising at least one group associated with each contact device" First Call ENS does not infringe the method claimed by either of the patents-in-suit.

### 3.  TechRadium Cannot Establish That Defendants' Systems Transmit Messages "Simultaneously"

The Court's *Markman* ruling defines "industry standard gateway" as

> .  .  .  a connection between two networks using different communication protocols that translates data from one protocol to another industry-standard protocol. Industry-standard protocols include a Megaco/H.248 protocol, a simple message transfer protocol (SMTP), a short message service (SMS) protocol, a multimedia message service (MMS) protocol, an enhanced message service (EMS) protocol, a media gateway control protocol (MGCP), a SIP protocol, a H.323 protocol, an ISDN protocol, a PSTN protocol, a softswitch protocol, or another protocol recognized as standard in the telecommunications industry.

(*See* Ex. 7.)  The Court's *Markman* ruling requires that an industry standard gateway "[translate] data from one protocol to another industry-standard protocol."  TechRadium cannot show that any defendants' system performs in this way.

Parlant systems do not translate data from one industry standard protocol to another industry standard protocol and, thus, do not transmit a message through an industry standard gateway.  All Parlant messages are either composed in a proprietary format or composed in the industry standard protocol format which is required by a particular vendor's telecommunications network.  For example, when Parlant systems send an email message, Parlant systems have composed, and continue to compose, the message in the SMTP protocol format and delivers the message in the SMTP protocol format to the vendor; the vendor then sends the email message to a user.

Parlant has not induced, and does not induce, telecommunications and data network vendors (vendors) to use industry standard gateways.  Parlant has not controlled, and does not control, the telecommunications networks through which vendors deliver messages for Parlant.  Likewise, for all these reasons, Parlant systems have not transmitted, and do not transmit, at least one message through *two* industry standard gateways (emphasis added).

The Court's *Markman* ruling defines "*simultaneously* to a first group . . . and then *simultaneously* to a second group" as "the administrator initiates the transmission of a message to a first set of user contact devices for all users in one or more particular groups of users at the same time, before initiating the transmission of that message to a second set of user contact devices at the same time."  Parlant systems have not initiated, and are incapable of initiating, transmission of a message to a first set of user contact devices for all users in one or more

particular groups of users at the same time before initiating the transmission of that message to a second set of user contact devices at the same time.

The Court's *Markman* ruling defines "transmitting . . . *simultaneously*" as "each message must be transmitted through more than one of the industry standard gateways at the same time." Parlant systems have not transmitted, and do not transmit a message through more than one industry standard gateways at the same time.  Parlant systems have not attempted, and do not attempt, to synchronize message delivery to the same device, or to the same user.  The software code of Parlant systems does not allow a phone message to a user to be transmitted to more than one vendor at the same time. Messages which are not phone messages, such as an SMS text message and an email message, are sent to vendors, and Parlant has not controlled, and does not control, whether two messages which are not phone messages, such as an SMS text message and an email message, are delivered to a user at the same time.

The TFCC UCS notification system does not practice a method that comprises "transmitting the at least one message through at least two industry standard gateways simultaneously."  As an initial matter, except for email, TFCC does not itself directly deliver messages to message recipients.  TFCC instead uses third party vendors.  (Curran Aff. ¶6.) When TFCC's UCS notification system initiates a message campaign, and before any message from TFCC is transmitted to a telecommunications port (i.e. a potential ISG), the message enters a series of polling and queuing mechanisms on the UCS platform.  (*Id.* ¶7.)  When an administrator initiates the origination of a campaign, the platform directs the generation of notification messages comprised of message content and delivery targets.  Not even the delivery of content and target to TFCC's bureaus is synchronized.  (*Id.*)

The Court has construed simultaneously to mean "at the same time."  In the field of telecommunications, it is generally understood that the term "simultaneous" means that no intervening event could occur, that is, no temporal gap during which another command could be issued.  (Curran Aff. ¶18.)  TFCC's message target addresses are not delivered to more than one telecommunications port simultaneously.  (*Id.* ¶21.)  Instead, the campaign activation protocol driving the UCS system is parsed sequentially acting on a set of sequencing instructions, distributing voice, facsimile, or text channels, individually in a defined sequence.  (*Id.* ¶22.)  Thus, messages to each different channel are delivered to individual channel queues at TFCC's outside vendors sequentially and not simultaneously.  (*Id.*)  The message content and message delivery target addresses are delivered from TFCC to different telecommunications channels sequentially.

TFCC does not deliver identical duplicate or redundant messages to a single contact target through more than one telecommunications port, neither sequentially nor simultaneously.  Thus, by the specific design of the UCS system TFCC does not, and has been incapable of, transmitting any messages "through at least two industry standard gateways simultaneously."  (Curran Aff. ¶23.)  More specifically, TFCC does not, and has been incapable of, transmitting any messages "through at least two industry standard gateways simultaneously, wherein the two industry standard gateways are selected from the group consisting of: a SMTP gateway a SIP, an H.323, an ISDN gateway, a PSTN gateway, a softswitch, and combinations thereof."  (*Id.* ¶24.)

In order to infringe the claimed method, TFCC must actually engage in all of the steps of that claimed method. Because TFCC utilizes a number of outside vendors to deliver voice, text and facsimile messages to various telecommunications and data networks, TFCC does not control the telecommunications ports through which its vendors deliver messages. In fact, other

than for email, TFCC does not operate telecommunications ports (*i.e.*, gateways) that connect with the message recipient as part of its UCS system. TFCC is not a direct infringer, and even if it were alleged to be an indirect infringer, TFCC does not exercise control over the message delivery to message recipients by its bureaus, and thus does not induce the infringement of the method by others.  Neither TFCC nor its bureaus practice all the steps of the claimed method, and neither TFCC nor its bureaus are direct or indirect infringers.  *See Miniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *On Demand Mach. Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331, 1334 (Fed. Cir. 2006); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293 (Fed. Cir. 2005).

Edulink's system also does not support the notion of sending one message to multiple groups in any kind of a staggered fashion with a click of a button as required by each asserted claim.  Edulink's system is inherently a single group system.  Edulink only provides for an administrator to initiate a message campaign (blast) to a single comprehensive calling list (group) at a time.

In Edulink's system,  the administrator interface cannot be used to ensure  that a message blast is received by a first group before automatic transmission of a message blast to a second group as required by the asserted claims.  As stated above, Edulink's system is inherently a single group messaging system and there is no support whatever for coordinated (or staggered) message blasts, and thus no mechanism to withhold the transmission of a message pending receipt notification of an earlier message blast.

The First Call ENS notification system does not practice a method that compromises "transmitting the at least one message through at least two industry standard gateways simultaneously."  As first explained by the defendant, TFCC, the court in its *Markman Ruling*

found that the term "transmitting the at least one message through at least two industry standard gateways simultaneously" means "each message must be transmitted through more than one of the industry standard gateways at the same time."  *See* Figure 1 of '165; 183.

Messages transmitted through the First Call ENS are not delivered to more than one telecommunications port or "gateway" at the same time. (Teague Aff. ¶¶10-16.)   The First Call system utilizes a proprietary protocol for sending emails (not an industry standard gateway) and uses a 3rd party vendor for sending SMS text messages.  (Teague Aff. ¶14.)  The First Call ENS does not send one message to different device types.  (*Id.* ¶15.)  The First Call ENS requires administrators to provide different messages for each device type to be contacted.  (*Id.* ¶16.) This is due to the constraints of message length for each protocol.  Thus, a message transmitted is not transmitted through "industry standard gateways" at the same time.

This concept further exemplifies that messages sent via voice, SMS, or e-mail are not synchronized in the First Call ENS and the methods by which they are transmitted do not communicate with one another during the transmission of a message.  The First Call ENS simply does not deliver identical, duplicate or redundant messages to a single target through more than one telecommunication port, neither sequentially nor simultaneously.  (Teague Aff. ¶16.)  Thus, because the First Call ENS does not practice the element of transmitting "one message through at least two industry standard gateways simultaneously," First Call ENS does not infringe the method claimed by either of the patents-in-suit.

> 4.     **TechRadium Cannot Establish That Defendants' Systems "Ensure Each User in the at Least One Group of Users is Contacted on the First Group of User Contact Devices Before the Second Group <u>of User Contact Devices Using the User Selected Priority nformation</u>"**

Parlant systems have never, and do not, ensure each user in the at least one group of users is contacted on the first group of user contact devices *before the second group* of user contact

devices using the user selected priority information. Claims 1 of the '183 patent and the '165 patent require "using the administrator interface to ensure each user in the at least one group of users is contacted on the first group of user contact devices *before the second group* of user contact devices using the user selected priority information" (emphasis added). The Court's *Markman* ruling defines "before the second group" as "before the second set of user contact devices". No interface has existed in Parlant systems to send a message to a first group before sending a message to a second group, and Parlant systems have not stored, and do not store, user selected priority information. Additionally, Parlant systems have not required, and do not require, that a user have a second set of user contact devices, and Parlant systems have not ensured, and do not ensure, that a group of users are contacted on a first group of user contact devices before a second group of user contact devices.

Similar to the other defendants' systems, the First Call ENS simply does not allow for notification of priority groups of user contact devices. (Teague Aff. ¶19.) Regardless of the method of the notification being transmitted, i.e. voice, SMS, or e-mail, the First Call ENS is designed and instructed to send out messages at once. Contrary to the method described in the patents-in-suit, notification channels are not sorted according to priority groups. As illustrated in the description of the First Call ENS herein, the First Call ENS does not and cannot collect, store, construct, or utilize any priority information regarding any of its recipients' contact information. Since its inception into emergency notification industry, First Call has strived to deliver and transmit massive amounts of notifications in times of emergencies and disasters to recipients swiftly and quickly as possible. To implement a notification system that uses the methods described in the patents-in-suit would be contrary to First Call's mission.

By way of illustration, a system that implements a method described in the patents-in-suit would allow a recipient of a message to rank and prioritize their preferred methods of notification.  Once a notification is initiated by the system, the highest priority device selected by the recipient would be contacted and, if no answer or response, then the next priority device would be contacted, and so on.  First Call simply uses a different message delivery strategy and contacts all of a recipient's contact devices at the same time.  Thus, because the First Call ENS does not practice the element of "using the administrator interface to ensure each user…, the first group of user contact devices before the second group of user contact devices…" the First Call ENS does not infringe the method claimed by either of the patents-in-suit.

TechRadium cannot prove its burden and demonstrate a prima facie case that all of the claim elements in the patents-in-suit are practiced by First Call.  In addition, First Call, through the argument provide herein and supporting affidavit, shows beyond dispute that it does not even have the capability of practicing at least four separate elements of the claims.  If there is no dispute as to material facts regarding any one of the highlighted elements, then summary judgment is proper.  As the deficient evidence from TechRadium, and the affirmative evidence from First Call show, whether together or separately, First Call is entitled to a judgment as a matter of law that First Call or the First Call ENS does not infringe on either the '165 or the '183 patent.

The structure of the TFCC UCS system simply does not allow for notification of priority groups of user contact devices.  TechRadium contended that a number of pieces of literature supported a contention of infringement of this claim element. The most favorable reading of TechRadium's citations would comprise the quote that "TFCC Alert's task-based workflow and one-page quick launch make creating and sending notifications stress-free.  Select the type of

message you'd like to send and TFCC Alert will present only the options needed for that particular message type."  Nowhere in TechRadium's contentions is there support for sending messages in separate delivery batches, to a first priority user contact device group, and then to a second priority user contact device.  Nor is there any support for using an administrator interface to ensure delivery of the first group before transmitting the second group.

TFCC's system simply does not operate in that manner.  As Jim Curran, one of the architects of the UCS system describes, the UCS system is configured to deliver instructions for sending large batches of messages through a given notification channel (i.e. text, voice, and email).  (Curran Aff. ¶8.)  The notification channel utilized for an individual message recipient is not sorted according to priority groups.  (*Id.* ¶11.)  TFCC does not collect user selected priority information, and cannot use information it does not possess to separate user contact devices into priority groups.  TFCC simply uses a different message delivery strategy.  The TFCC UCS notification system relies on the ability to transmit large quantities of message content and target address information to those of its vendors with available telecommunications capacity in order to deliver messages to all the addresses targeted by a campaign in rapid sequential order.  (*Id.* ¶¶6-8.)  Because the TFCC UCS system does not practice the element of  "using the administrator interface to ensure each user ….,the first group of user contact devices before the second group of user contact devices ….," the TFCC UCS system does not infringe the method claimed by either the '165 patent or the '183 patent.

As the description of the TFCC UCS notification system makes clear, TechRadium has failed to demonstrate the above claim elements are practiced by TFCC. TechRadium must demonstrate a prima facie case that ***all*** of the claim elements are infringed.  If there is no material dispute that any one of the elements is not infringed, then summary judgment is proper.  In

addition, TFCC, through affidavit and documentary evidence, shows beyond dispute that it does not even have the capability of practicing at least four separate elements of the claims.  If there is no dispute as to material facts regarding any one of the highlighted elements, then summary judgment is proper.  As the deficient evidence from TechRadium, and the affirmative evidence from TFCC show, whether together or separately, TFCC is entitled to a judgment as a matter of law that the TFCC UCS system does not infringe either the '165 or the '183 patent.

      C.      **The Plaintiff's Infringement Contentions Fail To Adequately Allege Infringement Of A Method Claim, And <u>The Asserted Claims Cannot Be Infringed As Contended</u>**

TechRadium is suing Defendants for patent infringement, asserting that software and systems sold by Defendants infringe Claim 1 of the '183 and '165 Patents.  However, it is black letter law -- and controlling law -- that a software system, even if it is *capable* of infringing a method patent, does not and cannot *directly* infringe method claims:  "We hold that a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."  *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008).

According to the Second Amended Complaint:

> Each of the Defendants named herein have and continue to infringe, contributorily infringe or actively induce the infringement of the ['165 and '183 Patent] by using, <u>selling</u> and offering for use or sale <u>products</u> and services within this judicial district <u>which incorporate TechRadium's patented technology.</u>  Each Defendant is offering for sale or use, or selling or using these products without license or authority from TechRadium.   (Doc. 167.)

Since selling a software product that *might* be used to infringe and method claim is not actionable under §271(a), and TechRadium has failed to articulate or propound any infringement theory under any other section of the patent statute, the case against defendants must be dismissed as a matter of law.

Section 271(a) of the patent statute controls claims of direct patent infringement where the accused directly infringes a patent.  The matter of software systems and method patents was squarely before the Federal Circuit in *Ricoh*, in a case with nearly identical facts as the instant case.  In *Ricoh*, the plaintiff Ricoh, like TechRadium in the present case, asserted that the defendant Quanta, like the defendants in the present case, infringed its method patent by selling software that is capable of performing the steps of the method claim.  The Federal Circuit flatly rejected that proposition, citing other case law stating "[t]he law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."  *Ricoh*  at 1334.  The Federal Circuit held that: ". . . a party that sells or offers to sell software containing instructions to perform a patented method ***does not infringe*** the patent under § 271(a)." *Ricoh* at 1335 (emphasis added).

Although TechRadium alleges in boilerplate language that defendants use the patented process, TechRadium appears to be relying solely on the sale of defendants' systems and software to make its case.  Even if defendants' customers were found to be using defendants' products to infringe a TechRadium method claim by sending out TechRadium's proprietary message blasts, direct liability would rest with the infringing customer, not defendants.  Only if TechRadium were to allege -- and then prove -- that defendants are ***indirectly*** liable, such as by inducing their customers to infringe, or contributing to direct infringement, could liability possibly arise.  Here, TechRadium has neither pled nor asserted in its infringement contentions, nor provided any evidence or provided defendants with any evidence or contentions whatsoever, that defendants are indirectly liable for any alleged direct infringement by customers transmitting "TechRadium-style" message blasts.

TechRadium has failed to plead or identify in its Complaint or contentions a single instance where a defendant allegedly sent a message using the steps of the claimed invention. (*See* Doc. 167; Exs. 3-6.)  TechRadium failed to articulate one such instance later in its infringement contentions, which it is now foreclosed from amending.  TechRadium has failed to plead any conduct by any defendant inducing others to send messages using the steps of the claimed invention.  The only conduct of defendants specifically identified by TechRadium in its pleadings is in fact lawful conduct (selling software or systems); therefore, the claim against defendants, as pled, is fatally flawed and must fail.

In order to cure its deficiency, TechRadium would have to articulate completely different allegedly infringing conduct to maintain a claim that defendants induced infringement or that otherwise did something actionable to contribute to the infringement of others.  The rules, including Rule 11, require a party to do a prefiling inquiry before filing such an action.  If TechRadium has not yet marshaled up even a modicum of evidence (for example, an advertisement) that any defendant ever induced anyone to practice TechRadium's claimed invention, it needed to do so before filing, and is also required to articulate such a theory as part of its P.R. 3-1(c) infringement contentions, which ***TechRadium did not do.***  Since it did neither in a timely fashion, it would be improper to allow TechRadium to do so now, even if it could.

Even if the Court allowed TechRadium an opportunity to cure its pleading deficiencies, TechRadium could not do so in good faith.  The claimed TechRadium process for sending messages involves several convoluted and complicated steps.  There is no reasonable basis whereby TechRadium could reasonably amend its claims and rehabilitate its defective pleadings.

Since 1) the sole TechRadium claim articulated is that software or systems sold by defendants contains TechRadium process patented technology, and 2) software or systems

cannot contain process patented technology as a matter of law, TechRadium's cause of action must be dismissed.

      **D.**    **TechRadium Has Not Asserted And Cannot Assert <u>Infringement Under The Doctrine Of Equivalents</u>**

Local P.R. 3-1(d) requires a patentee to provide claim charts including "for each Accused Instrumentality and each element of each asserted claim, identification of whether the element is claimed to be literally present or present under the doctrine of equivalents[.]"  P.R. 3-1(d).  In its infringement contentions, TechRadium did not identify ***any*** claim limitations that it alleged were present under the doctrine of equivalents.  (*See* Exs. 4-7.)  TechRadium has thus waived its right to assert infringement of any of the Asserted Claims by any of the Defendants under the doctrine of equivalents.  *See, e.g.*, *Nike, Inc. v. Adidas Am. Inc.*, 479 F.Supp.2d 664, 670 (E.D. Tex. 2007) (Clark, J.) (striking amended contentions of infringement by equivalents because earlier-served contentions included only a passing reference to the doctrine of equivalents).  Accordingly, once the Court has determined that TechRadium cannot establish literal infringement of the Asserted Claims, its inquiry can end, and judgment can be entered in defendants' favor.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Summary Judgment of non-infringement should be granted in

defendants' favor.

Dated: August 31, 2012                    By:  /s/ William H. Oldach III

William H. Oldach III (*admitted pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
1909 K Street, NW, 9th Floor
Washington, D.C.  20006
Tel: 202-467-8880
Fax: 202-533-9024
wholdach@vorys.com

Sharon K. Wendell
VORYS, SATER, SEYMOUR AND PEASE LLP
700 Louisiana, Suite 4100
Houston, Texas  77002
Tel: 713-588-7002
Fax: 713-588-7052
swendell@vorys.com

John Okuley (*admitted pro hac vice*)
OKULEY SMITH, LLC
Mueller-Smith Building
7700 Rivers Edge Drive
Columbus, Ohio  43235
Tel: 614-436-0600
Fax: 614-436-0057
jokuley@mullersmith.com

Robert T. Veon
Texas Bar No. 20546550
VEON LAW FIRM, P.A.
2710 Arkansas Boulevard
Texarkana, Arkansas  71854
Tel: 870-774-7390
Fax: 870-773-3690
robert.veon@veonfirm.com

*Attorneys for Twenty-First Century
    Communications, Inc.*

By:  /s/ William H. Oldach III (*with permission*)

Robert A. Huntsman (*admitted pro hac vice*)
HUNTSMAN LAW GROUP, PLLC
4466 Riva Ridge Way
Boise, Idaho  83709
Tel: 208-362-3723
Fax : 208-362-3723
law2010@huntsmanlg.com

*Attorneys for Edulink Systems, Inc.*

By:  /s/ William H. Oldach III (*with permission*)

Ryan R. Brown (*admitted pro hac vice*)
Carlton Jones III (*admitted pro hac vice*)
ROEDEL, PARSONS, KOCH, BLANCHE,
    BALHOFF & McCOLLISTER, APLC
8440 Jefferson Highway, Suite 301
Baton Rouge, Louisiana  70809-7652
Tel: 225-929-7033
Fax: 225-928-4925
rbrown@roedelparsons.com
cjones@roedelparsons.com

*Attorneys for First Call Network, Inc.*

By:  /s/ William H. Oldach III (*with permission*)

James Wesley Kinnear
(*admitted in the Southern District of Texas*)
California State Bar No. 124771
JEFFER, MANGELS, BUTLER & MITCHELL LLP
Two Embarcadero Center, Suite 500
San Francisco, California  94111
Tel: 415-398-8080
Fax: 800-219-2807
jwk@jmbm.com

Jacob C. Ong (*admitted pro hac vice*)
Parlant Technology, Inc., dba ParentLink
180 North University Ave., Ste. 500
Provo, UT 84601
Tel: 801-373-9669 ext. 104
Fax: 801-373-9697
jacob.ong@parlant.com

Hunter S. Barrow
Federal Admission No. 25828
State Bar No. 24025240
THOMPSON & KNIGHT LLP
333 Clay Street
Suite 3300
Houston, Texas  77002
Tel:  (713) 951-5838
Fax:  (713) 654-1871
hunter.barrow@tklaw.com

*Attorneys for Parlant Technology, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 31, 2012, a true and correct copy of the

foregoing document was filed with the Court's ECF system, and served upon all attorneys of

record via electronic mail and/or overnight courier service (Federal Express) pursuant to Fed. R.

Civ. P. 5(b), Local Rule 5.3, and as agreed upon by the parties in this case

*/s/ Sharon K. Wendell*