IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TECHRADIUM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-1887 |
| | § | |
| EDULINK SYSTEMS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

TechRadium, Inc. ("TechRadium") sued various defendants for infringement, alleging that they sold products incorporating TechRadium's patented technology without a license or other permission. The defendants counterclaimed, alleging noninfringement and invalidity. TechRadium settled or otherwise resolved its claims against all the defendants except Edulink Systems, Inc. ("Edulink").

TechRadium's U.S. Patent No. 7,496,183 (the '183 Patent) and U.S. Patent No. 7,519,165 (the '165 Patent) claim a method for providing simultaneous digital message notification to, and receiving responses from, a large number of users. Edulink develops and markets a digital mass-notification system. Following this court's claim-construction ruling, (Docket Entry No. 251), Edulink and several defendants who had not settled at that point moved for summary judgment of noninfringement, (Docket Entry No. 259). TechRadium responded, (Docket Entry No. 263), and the defendants replied, (Docket Entries No. 267, 268). This court also heard oral argument from counsel. (Docket Entry No. 293). Since then, all moving defendants but Edulink have settled.

Based on a careful review of the pleadings; the motions, responses, and replies; the summary

judgment evidence; the arguments of counsel; and the applicable law, this court grants summary judgment for Edulink. Edulink must submit a proposed order of final judgment no later than **May 17, 2013**.

The reasons for this ruling are explained below.

**I.     Background**

  **A.     TechRadium's Patents**

The '183 Patent has 37 claims. Claim 1 states:

> **1.** A method to provide a digital notification and response to groups of users having at least one contact device comprising:
>
> > storing in a dynamic information database:
> >
> > > user contact data for at least one group of users, wherein each user in the at least one group of users has at least one user contact device;
> > >
> > > *user selected priority information* that comprises *a contact order for each user contact device*; and
> > >
> > > user selected grouping information comprising at least one group associated with each user contact device;
> >
> > using an *administrator interface* to form at least one message;
> >
> > using an administrator in communication with at least one processor to initiate transmission of the at least one message *simultaneously to a first group of user contact devices for all users in the at least one group of users and then simultaneously to a second group* of user contact devices for all users in the at least one group of users using the user selected priority information and *transmitting the at least one message through at least two industry standard gateways simultaneously*; and
> >
> > using the administrator interface to ensure each user in the at least one group of users is contacted on the first group of user contact devices *before the second group* of user contact

        devices using the user selected priority information.

'183 Patent col. 12 ll. 14–40 (emphasis added).

The '165 Patent also has 37 claims. They are nearly identical to the claims in the '183 Patent. The main difference is that Claim 1 of the '165 Patent contains limitations about "responses" that do not appear in the '183 Patent. Claim 1 of the '165 Patent states:

> **1.** A method to provide a digital notification and response to groups of users having at least one contact device comprising:
>
>> storing in a dynamic information database:
>>
>>> user contact data for at least one group of users, wherein each user in the at least one group has at least one user contact device information;
>>>
>>> *user selected priority information* that comprises *a contact order for each user contact device*; and
>>>
>>> user selected grouping information comprising at least one group associated with each user contact device;
>>
>> using an *administrator interface* to form at least one message;
>>
>> using an administrator in communication with a processor to initiate transmission of the at least one message *simultaneously to a first group of user contact devices for all users in the at least one group of users and then simultaneously to a second group* of user contact devices for all users in the at least one group of users using the user selected priority information and *transmitting the at least one message through at least two industry standard gateways simultaneously*;
>>
>> using the administrator interface to ensure each user in the at least one group of users is contacted on the first group of user contact devices *before the second group* of user contact devices using the user selected priority information; and
>>
>> *receiving responses from the user contact devices* through the at least two industry standard gateways simultaneously by the

> administrator interface and storing the responses in the dynamic information database, wherein the responses indicate the user contact devices that have received the at least one message and the *responses indicate when insufficient user contact device information exists to contact* the user contact devices.

'165 Patent col. 11 l. 39–col. 12 l. 6 (emphasis added).

This court construed "user" to mean "an intended recipient of a message sent by an administrator" and "user selected priority information" as "information provided by a user specifying the order in which that user's contact devices are to be contacted." (Docket Entry No. 251).

**B.     Edulink's System**

Edulink, which specializes in K–12 education applications, markets the Intouch Notification System (the "Intouch System"). The Intouch System was developed in 1998. It integrates directly with many popular K–12 student-management systems. (Docket Entry No. 259, Ex. 10, Aff. of David Funderburk, President & CEO, Edulink, ¶¶ 5–6).

The Intouch System allows "message blasts" to be sent to multiple devices of a predefined group. The blast is initiated by a system administrator — usually a school administrator — and sent to identified devices of the group. Users — usually parents — cannot select their own groups. Instead, groups are defined by an administrator, who instructs the system who is in each group, usually using forms collected from parents when students register for school. (*Id.*, ¶ 17). Parents, as group members, can control what devices are used to contact them by providing that information to the school. But, according to Edulink, neither group members nor the administrator can set which device receives a message first, second, or third. (*Id.*, ¶¶ 14–15). If a parent provides an email address and a text-message number, for example, a message would be immediately sent to both

contacts, regardless of the device used to receive the message or the order in which the parent's device or devices actually receive the message. Edulink characterizes the order in which a message reaches the various specified devices as "virtually random." (Docket Entry No. 259, at 13). "Neither the administrator nor the recipient user can control or influence the order in any meaningful way." (*Id.*)

In an emergency, the Intouch System can be used to send messages to all addresses or numbers without regard to any priority or order. (Docket Entry No. 259, Ex. 10, ¶¶ 12, 15). Edulink characterizes its emergency-operation function as designed "to get messages out to all target devices as soon as possible." (Docket Entry No. 259). The Intouch System does not withhold message transmissions; transmission of one message does not depend on confirmation that an earlier message was received. (Docket Entry No. 259, Ex. 10, ¶¶ 20–21). Nor does the Intouch System's administrator interface support discrete "first" and "second" groups, or multiple targeted groups. (Docket Entry No. 259, at 13). "An administrative user obviously can send messages to different groups over time, but Edulink's Intouch System does not provide for coordinated staggered message distribution at all. 'Send' means 'Send now!' to Edulink's Intouch System." (*Id.* at 13 n.5).

According to TechRadium, however, Edulink has made claims or statements in marketing the Intouch System tending to show that it is capable of "stor[ing] the priorities or preferences identified by a user recipient when more than one device is entered into the system."[1] (Docket Entry No. 263, at 15). TechRadium cites Edulink's response to a request for proposal ("RFP") from Hillsborough County Public Schools in Florida. (*Id.* (citing Docket Entry No. 263, Appx., at 9)).

---

[1] Some of the Edulink literature in the record appears to use the term "user" to refer to administrators or to message recipients. To avoid confusion in light of this court's claim-construction ruling that user means the intended recipient of a message sent by an administrator, this court will attempt to clarify by using the term consistent with the claim-construction meaning.

5

In the response to the RFP, Edulink described the Intouch System as follows:

> Some of the options that may be selected by users [i.e., administrators] when setting up notifications include assigning high, medium or low priorities, allowing certain messages to be left on answering machines (either on the first try or after a selected number of tries), allowing call recipients to record responses, and randomizing the call lists. Users [administrators] may also select the 'one-per-family' option if a notification is intended to be delivered only once to each family regardless of the number of students they have."

(Docket Entry No. 263, Appx., at 9). In the response to the RFP, Edulink also explained that its system provides "unlimited grouping capability":

> The data available to users [administrators] for call list creation is automatically filtered by specific criteria such as the schools assigned to their account or the teacher ID associated with their account. Users [administrators] may further define their call lists by using a "point-and-click" Query interface to build Call groups that may be used immediately or saved for future use. Call Groups save the criteria associated with them, thus they are dynamic and will always bring up an accurate list based on information in the student information system.

(*Id.* at 8).

In the response, Edulink states further that by using its system, "[a]dministrators may record messages and initiate notifications from telephone or web interface." (*Id.* at 15). "In order to create and initiate a notification, a user [administrator] first decides the type of notification desired. Next the user [administrator] selects the call list using our Query interface . . . , records a message and initiates the notification or selects a calling window." (*Id.* at 16). As shown in a sample screenshot, one of the call windows permits "call and email" transmission. (*Id.* at 19).

Another document, the Edulink System Parent Portal Enrollment Instructions, describes similar functions. The Instructions tell the parent user–recipient to identify the various "Contact Devices" — telephones, email addresses, or text-message devices such as cell phones. (*Id.* at 31). "For each device," the parent may "Remove/Change [the] Order" of devices" by "us[ing] the up and

down arrows to change the priority the order the devices are called in." (*Id.* at 32). The parent is reminded to "enter . . . phone number[s] in the order of importance" because "[o]nce a number is called and connection is made successfully the system stops calling the other numbers." (*Id.*) "Each contact device can be setup to receive one or more types of notification[ ]." (*Id.* at 33). Checking boxes under message-type categories — such as "Always Call," "Absentee," or "Emergency" — will specify that the parent wishes to be contacted on the device for the type of notification checked. (*Id.* at 24).

An Edulink "User Guide," directed toward administrators, also states that the "Method(s) of Delivery" settings can be used to specify "whether to Call (record voice message), Email (email text message) or Text (sen[d] text to SMS device)." (*Id.* at 59). The administrator "can select one, two, or all three methods of delivery." (*Id.*) If an administrator chooses to "work with a database that is not part of the student information system," the administrator has the option to "build a user defined call list" from the database, but "[t]he contact devices (telephone numbers, email addresses) will appear in the default order for delivery. To use a different order click the Change contact order . . . option and rearrange the devices to the desired order." (*Id.* at 67).

### C.  Edulink's Motion for Summary Judgment

Edulink moved for summary judgment on the basis that its system could not perform every recited step of the claims at issue. (Docket Entry No. 259, at 16). It also argued that even if its system were capable of infringement, TechRadium's patents claimed methods for providing digital communications to large numbers of recipients and verifying receipt, while Edulink only sold software that others might be able to use in an infringing way. Edulink argued that mere sale of such a software or system is insufficient as a matter of law to establish infringement under *Ricoh Co. v.*

*Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008). In response, (Docket Entry No. 263), TechRadium argued that Edulink did more than make software available that might be used for infringement. Rather, according to TechRadium, there is evidence in Edulink's own marketing and product descriptions showing that Edulink's system was actually used to infringe. Edulink replied, (Docket Entry No. 267, at 10–11), and supplemented its response to address the *Ricoh* argument, (Docket Entry No. 268).

The arguments and responses are discussed below.

## II.     The Applicable Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the

motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Little*, 37 F.3d at 1075 (citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Patent Infringement

Patent infringement claims involve two analytic steps. *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004); *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1302 (Fed. Cir. 2004). First, the court determines the meaning and scope of the asserted claims. *Scanner*, 365 F.3d at 1302; *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). Second, the claims as construed are compared to the allegedly infringing method or product to determine whether the claims encompass the accused method or product. *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn

in favor of the patentee." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). When the movant and nonmovant agree on the meaning of the relevant term, a court need not formally construe the claims to decide a motion for summary judgment of noninfringement. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

"Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997)), *overruled on other grounds*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) (en banc). The patentee "may do so by relying on either direct or circumstantial evidence." *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1060 (Fed. Cir. 2009); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("[P]roof of inducing infringement or direct infringement [does not] require[] direct, as opposed to circumstantial evidence . . . . It is hornbook law that direct evidence of a fact is not necessary." (emphasis omitted)), *abrogated on other grounds*, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). Because dependent claims incorporate all the limitations of the independent claims from which they depend, if even one limitation of an independent claim is not met, there can be no infringement of its dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

"In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). A patentee cannot prove direct infringement merely by showing that an accused system is capable of infringement

unless the patent specifically claims the capability to do some thing. *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009). Similarly, "[t]o infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). TechRadium must show that Edulink's system enabled user-selected contact-device prioritization and, for TechRadium's method claims, that prioritization occurred. *See BMC Res.*, 498 F.3d at 1378, 1380; *Lucent*, 580 F.3d at 1317. TechRadium may rely on circumstantial evidence to raise a fact issue as to infringement. *See Linear*, 566 F.3d at 1060; *see also Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012) ("'Direct infringement can be proven by circumstantial evidence.'" (citing, *inter alia*, *Moleculon*, 793 F.2d at 1272)). Such evidence must show "more than the fact that the accused [technology is] merely 'capable of' infringing." *Toshiba Corp.*, 681 F.3d at 1366.

## III.    Analysis

Edulink argues that its system either cannot perform each claimed step of the patents or that its system has not actually allowed each step to be performed. Edulink argues:

> With Edulink's system, users cannot select priority information that comprises a contact order for each user contact device as required by each asserted claim because Edulink's contact devices are ***unordered***. In Edulink's system, messages for all contact devices for a user are initiated simultaneously, thus there is no contact order (other than all devices simultaneous, a behavior that the user cannot change.) Edulink's system cannot use user selected priority information to initiate transmissions as required by the asserted claims because there is ***no priority information***, user selected or otherwise, in Edulink's system.

(Docket Entry No. 259, at 21 (emphasis in original)).[2]

---

[2] The record reflects some ambiguity about the degree of simultaneity with which the Intouch System delivers messages. On one hand, Funderburk explained that the messages are sent to all devices within a group simultaneously. (Docket Entry No. 259, Ex. 10, ¶¶ 5–6). On the other hand, Edulink describes the order in which messages are received as "virtually random." (Docket Entry No. 259, at 13). The record evidence shows that the Intouch System may be able to *send* a message to all devices simultaneously but

TechRadium relies in part on the statement in the Edulink Parent Portal Enrollment Instructions that the Intouch System allows the parent — i.e., the recipient user — to "define[ ] 'Contact Devices' (phones, email addresses or text message devices such as cell phones) to receive school messages with." (Docket Entry No. 263, Appx., at 33). The parent is reminded to "enter the phone number in the order of importance" because "[o]nce a number is called and connection is made successfully the system stops calling the other numbers." (*Id.* at 32). The affidavit evidence provided by David Funderburk shows that the cited sentences are not a complete description of the Intouch System.

>  Funderburk stated as follows:
>
> Using Edulink's system, users cannot select call priority information having a contact order for each user contact device because the contact devices utilized by Edulink's system are generally unordered with respect to the initiation of message transmissions.
>
> In Edulink's system, message transmissions for all contact devices for a user, with one exception, are logically initiated in no particular order by the administrative interface. (Due to nuances of the various underlying communication technologies involved, the order of the actual physical initiation of message transmissions is hidden from and not controlled by either the administrator or the user.)
>
> The exception to the unordered initiation of messages identified above is that for telephones only, there is an option to require cascaded phone calls, a common and well known practice. If the cascading option for telephones is selected, all telephones are treated as a single contact device and each telephone is called in an order that can be set by the user; the first telephone that answers the call serves as the contact device for all telephones. If the cascading option for telephones is not

---

offers no ability to send to all specified devices in one group before sending to a second group, and offers no control over when or if those messages are actually *received* by the various devices. TechRadium offers evidence that the Intouch System can initiate messages simultaneously as evidence of infringement. (Docket Entry No. 263, at 17). Edulink does not deny that its system is capable of simultaneous message initiation. Edulink's materials show that an administrator can initiate simultaneous "call and email" transmissions for example. (*See, e.g.*, Docket Entry No. 263, Appx., at 19). Even if the Intouch System performs one step claimed in TechRadium's patents, Edulink is not liable for infringement, as explained further below, because the Intouch System does not perform every claimed step. *See, e.g.*, *BMC Res., Inc.*, 498 F.3d at 1380.

> selected, then each telephone is treated as an independent messaging device subject to the unordered initiation of message transmission described above. Thus, messages are transmitted to all devices associated with a user without regard to any specified user priority ordering. Whenever two or more gateways and their associated protocols are involved (telephone and email, for example,) the user cannot specify [ ]or control the order messages are initiated.

(Docket Entry No. 259, Ex. 10, ¶¶ 14–16 (emphasis omitted)).

Under the Edulink system, if a "cascading" option for telephones is selected, "all telephones are treated as a single contact device and each telephone is called in an order that can be set by the user." (*Id.*, ¶ 16). If the administrator does not select the "cascading option" for telephone calls, according to Edulink, there is no user-specification of the order in which telephone calls are initiated.

Under the cascading option for phone calls, the parent user–recipient may select which number to be called first, second, and so on. The first number that is reached becomes the last call made. But this feature is limited to a single means of messaging — telephone calls — that treats the ordered contacts within a singe category of devices — telephones — as one "device." Even if three phone numbers must be called before a number is successfully reached, the Intouch System "cascading" function considers the message delivered to a telephone device only once. And if the recipient provides both telephone and email addresses, for example, an email would be sent regardless of how many numbers are called before the telephone call is delivered to the user–recipient's telephone.

According to Edulink, there is no evidence that controverts the affidavit statement that telephones are the only exception to the unordered initiation of messages, and then only in "cascading" mode. And in that mode, the Intouch System allows user-selected prioritization among telephone numbers, not among the message formats that can be received. The Intouch System does

13

not, for example, allow user–recipients to prioritize telephone calls over text-messages or emails. Nor does the Intouch System send messages in a priority order first to defined devices for a certain group, then to defined devices for a second group. The same is true for the "cascading" mode: the Intouch System does not wait to telephone a defined second group of telephone numbers pending the results of telephoning a first group of telephone numbers. Attempts to telephone user–recipients on telephone numbers identified as secondary are initiated without respect to whether other user–recipients' primary telephones were successfully contacted.

Edulink's argument does not appear fully to explain how the Parent Portal Enrollment Instructions, which tell the user–recipient to select an "order of importance" or "the priority the order the devices are called in," are consistent with Funderburk's affidavit. The Instructions are not limited to telephones and telephone numbers. To the contrary, the option to select the order — or "the priority" — applies to "contact devices," which are defined to include "phones, email addresses, [and] text message devices such as cell phones." (Docket Entry No. 263, Appx., at 31–33). Edulink does state that its "device selection feature differs from the user priority information required for use in a TechRadium message blast." (Docket Entry No. 267, at 11 (citing Docket Entry No. 259, Ex. 10, ¶¶ 14–16)). But this does not fully explain the relationship between the statement in the Instructions that user-specified priority is limited to cascading phone calls and the ability of a user–recipient to assign order not only to phone numbers, but also to email addresses and text-messaging numbers.

Other Edulink materials and Funderburk's explanation of the telephone-call exception, however, provide some clarity. Despite the ambiguous reference to "devices," the Instructions discuss *only* the order of telephone calls. This is consistent with Funderburk's explanation that

14

priority of telephone numbers only applies under the cascading option. The Edulink response to the RFP, the User Guide, and Instructions are consistent with the description that the only Intouch System feature that allows any ordering is telephone calls. Funderburk did not fully explain the reason for allowing the user–recipient to move email addresses and text-message numbers up or down the list of contacts. But TechRadium offers no evidence to contradict Edulink's explanation that "Chang[ing the] Order" of nontelephone devices does not actually change their functional priority. At most, TechRadium's argument shows that its interpretation of the Instructions is not inconsistent with one aspect of TechRadium's infringement claim — that the Intouch System enables users to prioritize telephone devices. There is no evidence that assigning an order to nontelephone devices affects the order of message initiation.

Even if the Intouch System arguably enabled some degree of ordering of a user's devices, Edulink argues that under *Ricoh*, "method claims need to be asserted on the basis of actions and cannot be sustained by solely alleging the existence of software allegedly capable of performing infringing the steps of the method." (Docket Entry No. 268, at 2). Edulink argues that "[I]nfringement requires the actual usage of the software performing the method. Infringement arises not because of anything the underlying software is doing but because of what a user is causing the software to do." (*Id.* at 3 (emphasis in original)). TechRadium argues that, viewing the summary judgment evidence in the light most favorable to TechRadium, "what [the] user is causing the software to do" is actually performing the infringing steps. According to TechRadium, the response to the RFP, the Intouch System Instructions, and the User Guide appear to show that whenever a parent inputs more than one contact device, or provides one or more email addresses, text message numbers, or phone numbers, she lists them in order of preference or priority.

TechRadium argues that this is circumstantial evidence that the Intouch System does in fact allow users to prioritize the order in which messages are sent to their various contact devices.

A plaintiff may rely on circumstantial evidence to raise a fact issue as to infringement. *See, e.g.*, *Linear*, 566 F.3d at 1060; *see also Toshiba Corp.*, 681 F.3d at 1364. Such circumstantial evidence can include marketing materials and product descriptions tending to show that actual infringement was necessary for the product to perform as described. *See, e.g.*, *Emtel, Inc. v. Lipidlabs, Inc.*, — F. Supp. 2d —, —, 2012 WL 5377793, at *9 (S.D. Tex. Oct. 31, 2012) (explaining that evidence tending to show that the accused system necessarily allowed actual infringing use to perform as promised to clients showed "'more than the fact that [the system was] merely 'capable of' infringing" (quoting *Toshiba Corp.*, 681 F.3d at 1366)).

In this case, however, TechRadium's circumstantial evidence is not sufficient to survive summary judgment. Edulink's marketing and product descriptions merely show that parents actually input more than one piece of contact information, such as a phone number and email address. A sample screenshot of the administrator interface, for example, shows that one of the call windows permits "call and email" transmission. (Docket Entry No. 263, Appx., at 19). Edulink also responded to the concern expressed by the Hillsborough County Public Schools about unanswered phone calls by representing that the Intouch System could be configured to continue calling until a "live voice" answered. But an option to select the order of priority of calling applies to no contact devices beyond phones or message formats beyond telephone calls. Nor is there evidence — circumstantial or otherwise — tending to controvert Funderburk's statement that cascaded telephone numbers are treated as a single device (a telephone) and contact method (a telephone call), and that other contact devices — such as computers (email) or smartphones (for email and/or text messaging)

— are simultaneously contacted notwithstanding attempts to telephone multiple numbers.

The record further defeats TechRadium's argument that Edulink's system infringes because it has "unlimited grouping capabilities." (Docket Entry No. 263, at16). The record is clear and consistent that the Edulink system does not allow users to select grouping information. Instead, grouping is done only by an administrator. Funderburk explained in his affidavit:

> Edulink's system cannot use user selected priority information to initiate transmissions as required by the asserted claims because there is no priority information to order message transmissions, user selected or otherwise, in Edulink's system.
>
> In Edulink's system, the administrator interface cannot be used to ensure that a message blast is received by a first group before automatic transmission of a message blast to a second group. Edulink's system is inherently a single group messaging system and there is no support whatever for coordinated (or staggered) message blasts and thus no mechanism to withhold the transmission of a message pending receipt notification of an earlier message blast.

(Docket Entry No. 259, Ex. 10, ¶¶ 19–20 (emphasis omitted)).

TechRadium cites the Intouch System's feature allowing user–recipients to configure "[e]ach contact device [to] be setup to receive one or more types of notification[ ]." (Docket Entry No. 263, Appx., at 33). This capability apparently refers to the feature allowing parents to specify, for example, that the system should "Always Call" a telephone number, but only "Emergency" messages should be delivered via text message. (*See id.* at 24). TechRadium's patent, however, refers to the grouping of devices based on priority. There is no evidence here, for example, that user–recipients group devices as "Emergency" devices as backup contact devices after a failed attempt to reach an "Always Call" device. Rather, the uncontroverted evidence shows that the Intouch System allows parents to use these settings to select which messages a device will receive within those sent to all devices within a group set by a system administrator.

17

TechRadium's argument appears to rest on the confusion in the record caused by Edulink's repeated use of the word "user" in the Intouch System materials. But this court's claim-construction ruling clarified that "user" in the context of TechRadium's patent means the message recipient. In the materials that TechRadium relies on, Edulink used the term "user" to refer to the system administrator when discussing grouping capabilities. TechRadium has neither presented nor identified evidence tending to show that user–recipients have performed or are able to perform the requisite grouping.

In sum, Edulink is entitled to summary judgment.

## IV. Conclusion

The motion for summary judgment is granted. Edulink must submit a proposed order of final judgment no later than **May 17, 2013**.

SIGNED on May 1, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge